ROSA FUENTES, Plaintiff and Appellant, *v.* HULL DOBBS COMPANY OF PUERTO RICO ET AL., Defendants and Appellees.

No. 12884.     Decided June 18, 1963.

*Jorge Benítez Gautier* and *Luis F. Cuyar* for appellant. *B. Sánchez Castaño, R. Rivero Cervera,* and *Ana Rita Rodríguez* for appellees.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant Rosa Fuentes brought an action against appellees Hull Dobbs Company of Puerto Rico (hereinafter designated Hull Dobbs) and Universal C.I.T. Corporation (hereinafter designated C.I.T.) to rescind a contract whereby appellant purchased from Hull Dobbs a Ford truck for the sum of $5,792. Apparently the tires of the truck were defective and Hull Dobbs refused to replace them with good ones, notwithstanding the steps taken by appellant. Appellant therefore requested refund of the trade-in value of his used vehicle, namely, the sum of $2,307, plus $1,000 for loss of use of the truck. As second cause of action appellant alleges that when he insisted that Hull Dobbs comply with the contractual obligation, he was ill-treated by word of mouth by one Marín, a Hull Dobbs executive, and thrown out of his office, causing

him great humiliation and shame and injuring his standing in the community, estimating such damages at $3,000.

The case having been heard, the trial court dismissed the complaint. In its findings of fact it determined that the sale of the truck had been executed under a conditional sales contract which was subsequently assigned to C.I.T. and executed by the latter by attaching the truck upon Rosa Fuentes' failure to pay promptly the instalments agreed upon; that the truck was delivered with tires, but without tubes, and as part of the transaction Hull Dobbs guaranteed free service for 90 days or during the first 4,000 miles traveled by the vehicle, and the parties agreed that Hull Dobbs would not be responsible for defects in the tires; that the truck is in the Hull Dobbs shops; that in an inspection made to that effect the trial judge "observed that the tires were in good condition . . ." and that "The front spring of the vehicle was broken and the platform was dented as a result of overloading." As to the second cause of action, the trial court ruled that "It is also of the opinion that the employees of codefendant Hull Dobbs Co. did not commit any obstinate, rash and malicious acts." As to C.I.T., it held that appellant "acquiesced in open court in granting the replacement requested and, consequently, the court will issue an order to restore the truck in that case."

Feeling aggrieved, appellant appealed to this Court seeking review which we granted. He alleges that the trial court committed six errors of fact and of law in holding, briefly, that:

A. Hull Dobbs did not hold itself responsible for the tires; that the truck was in the shops of Hull Dobbs in the same condition as when it was attached; that it was overloaded; that the tires were in good condition.

B. That there were no hidden defects in the thing sold.

C. That Hull Dobbs did not commit any obstinate, rash and malicious acts.

Since the first two assignments are interrelated, we will discuss them jointly. For the purposes of decision, it has been necessary to make a careful analysis of the evidence which may be summed up as follows:

On the day prior to the execution of the contract appellant received the new vehicle in the establishment of Hull Dobbs on Brugal road. After he left he noticed that one of the tires of the truck was practically deflated, and he called this condition to the attention of an employee of Hull Dobbs; that it was immediately inflated at a nearby filling station. The next morning the same tire was deflated. Appellant again went to Hull Dobbs where he saw the employee of Hull Dobbs named Martínez who sold him the truck "in order to report the defective tire" so he would change it, but Martínez told him that he should have alleged it the day before, "That he had no right any more"; he referred him to the chief salesman surnamed Marín in the Hull Dobbs office in Puerta de Tierra, and appellant went there with a note from Martínez. But Marín said "that he could not do anything because he had not sold that truck"; he went back to Martínez and the latter said "that he could not do anything either." Thereupon appellant replaced the defective tire by the spare tire; he took the truck in order to have the body repaired; three days later, when he went to call for it, he noticed that the tires were deflated; he inflated them again, but on the succeeding days they deflated continuously to the point that at the end of the week he concluded that the truck was a "problem." He went again to Hull Dobbs office in Brugal and explained to Martínez the trouble with the tires. Martínez referred him to Diego Agüeros in San Juan, the tire representative, and the latter referred him to one González at Stop 7 in the General Tire agency. The latter told him that he could not provide service because he had not sold the truck to him, "not even those tires, and that he did not carry that class of tires. That he did not bring them to Puerto

Rico because there was no market for them." However, González accompanied him to see Marín in the Hull Dobbs office in Puerta de Tierra, and the former said to the latter "not to turn that problem over to him because he could not assume that responsibility." After González left Marín tried to convince appellant that the tires were good, to take the truck "and have it checked in any filling station, that everybody knows how to fix that." Appellant answered that he had done that already, and suggested leaving the truck with Marín so he would have it repaired and to let him know when the truck was in working condition so he could call for it. Thereupon Marín uttered offensive and obscene language, and said to him violently, "Get out of here as soon as possible and don't bother me with the problem of the tires." When appellant refused, Marín sat down and got up again and pushed the desk against appellant. Witness Montalvo, who was present with many other persons who witnessed this incident, testified that he heard the obscene language uttered by Marín; that the latter pushed the appellant and that Montalvo then stepped in between them and said to Marín, "don't do that, you are twice as big as that one. Don't treat him like that, that's abusive." Appellant again went to see González at the General Tire agency. The next day appellant removed the four deflated tires from the truck and took them to Hull Dobbs at San Agustín Avenue. Shindledecker, the head of the shop, gave him a letter for the General Tire office in Puerta de Tierra, addressed to the said González, but the latter answered that he was compelled to tell him for the third time that he could not do anything; to see a lawyer. Lastly, appellant testified that Hull Dobbs never did anything about his claim.

Since appellant failed to pay the first instalment of the conditional sale of the truck, C.I.T. brought an action to repossess the same. When the marshal took the truck in pursuance of the attachment, almost all the tires were deflated. In his testimony on direct examination as well as on

cross-examination, appellant said that he knew nothing about the type of tire which gave rise to the cause and that he was not an expert on that matter. As to the service warranty policy, appellant testified on cross-examination that he was not given the document, but that he was told that the truck had a three-months warranty.[1] The testimony of witness Luis Rondón Llopis, driver of the truck in question, substantially corroborates appellant's regarding the difficulties with the truck tires and the different steps taken by both of them with different employees and in different offices of Hull Dobbs, of Diego Agüeros and of General Tire. He denied ever going to Firestone corporation or seeing any letter from Hull Dobbs in connection with a possible settlement of the controversy on the tires. He denied overloading the truck. This witness as well as appellant testified and asserted that the defect of the tires rendered the truck inadequate for the use to which it was devoted. Witness Lancaster, Hull Dobbs manager, admitted that he had received complaints about the tires, but that the Ford Company did not guarantee the tires—he does not know why; that the service warranty, excluding the tires, is attached to the sales contract. In answer to the letter from appellant's attorney presenting the latter's claim (plaintiff's Exh. 3), the witness answered by letter (plaintiff's Exh. 4) that the service warranty given to appellant excluded the tires; that Shindledecker, of Hull Dobbs service department, had given a letter to appellant for the Firestone corporation where he was informed that if the adjustment which they offered was accepted, he would have to pay for the time and mileage of the tires used and that they were overloading the truck, and recommended him to pay the difference and to use 12-ply canvas tires (which he refused to do) ; that appellant went back to Hull Dobbs office to threaten Marín with bodily injury and Marín asked him to leave.

---

[1] Although the warranty document was identified, it was not offered in evidence.

Lastly, Lancaster suggested that appellant and his attorney visit the offices of the former so he could send them with someone to the tire company in order that the attorney could consider the adjustment which had been proposed. Witness Shindledecker testified that he first sent appellant with a letter (plaintiff's Exh. 2) to the General Tire enterprise in order that they would make an adjustment on the tires; that he then consulted Lancaster and was informed that Firestone would handle the complaints on tires; that Fuentes went to see him shortly afterwards and he sent him with a letter to Firestone; that the company agent told him by telephone that Fuentes was claiming another kind of tire, and that evidently he was overloading the truck. He said that he had no copy of the letter to Firestone, but that he could get copy of the letter which he sent to General Tire. Appellant denied having received from any officer of Hull Dobbs the letter sent to the Firestone corporation and that he was never sent there.

■ It appears from the evidence that the service warranty did not form part of the sales contract entered into by appellant with Hull Dobbs, since the latter provides that "the vendee, under his signature affixed hereinbelow, declares and assures that when the preceding contract was signed it contained everything agreed upon by the parties and was complete, and confesses that a true copy of the contract has been delivered to him." On the back of the contract it is provided that: "No covenant, representation, or warranty shall be compulsory for the holder unless it is expressly contained in this contract." The record shows that the warranty was not attached as part of the contract nor was express reference thereto made therein. Furthermore, the warranty was not offered in evidence; the copy thereof which was identified by its own terms was not valid and effective, and it was not established that the reference to the exclusion of the tires from the warranty was called to appellant's atten-

tion in any manner whatsoever and much less as an essential condition of the sales contract.

■■ The evidence showed fully and unquestionably that the tires of the truck in question were defective when the vehicle was delivered to appellant not only by the uncontroverted testimony of the latter and of witness Rondón, but also that Lancaster himself, manager of Hull Dobbs, admitted that he had received complaints on tires and that he learned of appellant's complaint and that attempts were made to find a solution, which was improper, of making an adjustment through three local agencies of tire manufacturers. It was after appellant entrusted his claim to an attorney that Hull Dobbs alleged that the difficulty with the tires was due to the fact that the truck had been overloaded, which contention is based, not on an inspection of the vehicle by the Hull Dobbs itself when the complaint on the tires arose, but on an information allegedly given by telephone to Shindledecker, a Hull Dobbs employee, by an employee of the local agency of Firestone corporation to whom Shindledecker allegedly referred appellant with a letter, of which he testified he had no copy, which reference and letter appellant expressly and categorically denied. We therefore conclude that this picture of live reality has not been, and cannot be, controverted by the trial judge's conclusions based on an inspection of the vehicle made six months after it was repossessed and after being all that time in possession of Hull Dobbs, from which he concludes without more "that the tires of the truck were in good condition" and that "The front spring was broken and the platform was dented as a result of overloading." There is no expert evidence in the record to support these conclusions. The tires in question were of a new design, "without tubes," recently created and, hence, little known in Puerto Rico at the time Rosa Fuentes purchased the truck in question and certainly not known to appellant. There is no question that since tires are an essential fixture of the

truck, the defect thereof appearing from the evidence in this case constitutes a hidden defect of the truck at the time of sale.

This is therefore a clear case of a thing sold with a hidden defect which renders it inadequate for work, which was not apparent nor visible and which the vendee, without having knowledge of the class of tires in question since they were new to him and he was not an expert on the matter, could not readily detect. The testimony of Lancaster, manager of Hull Dobbs, shows that the latter was aware of the hidden defect or vice in question. In bringing his action in this case appellant chose to rescind the contract of purchase of the truck and properly claimed damages (31 L.P.R.A. §§ 3801, 3831, 3841, 3842 and 3843); *D'Azizi* v. *Alcaraz*, 40 P.R.R. 468 (1930); *Marrero* v. *Mayagüez Garage, Inc.*, 31 P.R.R. 859 (1923).

As to the loss sustained for the nonuse of the truck, appellant testified that a truck which he used prior thereto averaged a gross income of $680 a month from which it was necessary to deduct $239 for payments on the truck, from $150 to $160 for the employee's salary, and an average of $68 for gasoline and oil, so that his net profit was $150. The truck was hardly used one full week. As soon as appellant failed to pay the first instalment under the conditional sales contract, the C.I.T. filed a repossession proceeding as a result of which the truck was attached on August 10, 1956. Appellant therefore established that those damages consisted in a net monthly profit averaging $150, to which it is necessary to add the sum of $239.46 for the financing of monthly instalments which, for the purposes of assessing the damages in this case, were improperly deducted from the monthly average gross income received by him from the operation of the former truck. Hence, the amount of the damages must be computed at the rate of $389.46 a month. Appellant took possession of the truck on June 13, 1956, put it to work one

week, so that he was in possession thereof without being able to use it from June 20, 1956 to August 20, 1956, when C.I.T. attached it, that is, two months. We therefore conclude that the amount of the damages sustained by appellant, according to the provisions of § 1375 of the Civil Code (31 L.P.R.A. § 3843), is $778.92.

■ From the moment appellant chose to rescind the contract, namely, from the date of the complaint in this case, July 25, 1956, Hull Dobbs was under the obligation to refund the sum of $2,307 paid by appellant and credited by Hull Dobbs toward the payment of the truck, and upon failure to do so the latter defaulted. Consequently, interest at 6 percent per annum should be allowed on said amount, in addition to the damages sustained by appellant, from the aforesaid date until full reimbursement thereof (31 L.P.R.A. § 3025). According to Rule 44.3 of the existing Rules of Civil Procedure, justified damages consisting in the said interest may be awarded in a case like this, even if it has not been claimed in the complaint. In view of the foregoing, we further conclude that appellee's action in defending itself in this case was manifestly obstinate.

■ The judgment will be affirmed as to the second cause of action (assignment C above). Even if the trial judge had determined that the Hull Dobbs employee uttered the offensive words complained of by appellant and had thrown him out of his office, his action did not constitute slander per se since they were uttered in an outburst of excitement and passion, *Moraza* v. *Rexach Sporting Corp.*, 68 P.R.R. 433 (1948), and, besides, they were not meant to injure Fuentes in his business, since they did not touch anything relating thereto or appellant's personal character in the functions of his business, such as lack of integrity and honesty. Newell, Slander and Libel, §§ 150, 154; *cf. González* v. *Rámirez Cuerda*, ante, p. 121; *Bosch* v. *El Imparcial, Inc.*, 87 P.R.R. 269 (1963).

For the reasons stated, the judgment is reversed as to the first cause of action, and, consequently, appellee Hull Dobbs Company of Puerto Rico is ordered (1) to pay to appellant the sum of $778.93 for damages, (2) to reimburse to appellant the sum of $2,307 plus interest thereon at 6 percent annually from July 25, 1956, until full settlement thereof, plus the costs, including those incurred in the present appeal, and $1,000 for attorney's fees. The judgment will be affirmed as to the second cause of action.